IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DANA ABERNATHY DUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-cv-489-JTA |
| | ) | |
| KILOLO KIJAKAZI, | ) | (WO) |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pursuant to 42 U.S.C. § 405(g), the claimant, Dana Abernathy Dunn ("Dunn"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner").  (Doc. No. 1.) [1]  The Commissioner denied Dunn's claim for a period of Disability Insurance Benefits and Supplemental Security Income.  (R. 1033.) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Docs. No. 11, 12.)

After careful scrutiny of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be AFFIRMED.

## I.     PROCEDURAL HISTORY AND FACTS

Dunn was born on November 19, 1963 (R. 379) and was 55 years old at the time of the administrative hearings held on June 10 and November 7, 2019 (R. 1074-94, 1044-73).

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

Dunn completed high school.  (R. 1031.)  She previously worked as a medical records clerk and payroll clerk.  (R. 1031.)

On September 16, 2013, Dunn filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C. §§ 401, *et seq*.) and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act (42 U.S.C. §§ 1381, *et seq*.). (R. 244-46.)   In a Notice of Award dated November 26, 2014, the Commissioner informed Dunn that she was determined to be disabled from April 2011 through March 2013, and that she was entitled to monthly disability benefits from October 2011 through May 2013.  (R. 286-89.)

Dunn challenged the Commissioner's decision that her disability ended in March 2013 by requesting a hearing before an Administrative Law Judge ("ALJ").  (R. 255-57.) On July 20, 2016, the ALJ issued a decision finding that Dunn had not been disabled since March 1, 2013.  (R. 29-66.)  The Appeals Council denied review of the ALJ decision.  (R. 1-5.)

Dunn appealed the Commissioner's decision to this court.  *See Dunn v. Berryhill*, Case No. 2:17-cv-662-GMB (M.D. Ala.).  The Commissioner filed an unopposed motion for remand pursuant to sentence four of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *See Dunn v. Berryhill*, Case No. 2:17-cv-662-GMB, Doc. No. 17.  This court granted the motion and remanded the case to the agency.  (R. 1142-43.)

The remand order issued by the Appeals Council provided the following procedural background on Dunn's application:

> The claimant filed applications for Title II and Title XVI disability benefits on September 16, 2013.  Although the claimant met Listing 12.02, both claims were initially denied because the disability began after the claimant's date last insured (for Title II purposes) and ended prior to the date of application of the Title XVI claim.  However, after a correction was made to the claimant's date last insured, a closed period of disability (April 27, 2011 through March 1, 2013) was awarded on the Title II application.  The claimant's request for hearing applied to the Title II claim (Exhibits 15B, 16B).  In considering these claims, the hearing decision did not consider if the claimant experienced medical improvement related to her ability to work as of March 1, 2013.  Instead, the decision determined it would not "reopen" the state agency's determination . . . However, the appeal before the ALJ directly included the closed period determination on the claimant's Title II claim; reopening was not an issue.  Further evaluation of whether the claimant experienced medical improvement related to her ability to work is required.

(R. 1146.)  The Appeals Council ordered the ALJ to do the following:

- Determine whether the claimant experienced medical improvement related to her ability to work.  If necessary, obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairments (20 CFR 404.1513a(b)(2) and 416.913a(b)(2)).

- As appropriate, proceed through the sequential evaluation process.

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14).  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966).  Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(R. 1147.)  The Appeals Council noted that Dunn's subsequent application on August 31, 2017 for Title XVI disability benefits was a duplicate claim due to its order on the remanded applications and directed the ALJ to consolidate the 2017 application into the previous claim file.  (*Id.*)

Following the administrative hearings conducted in June and November 2019, the ALJ issued a partially favorable decision on April 23, 2020.  (R. 1009-43.)  The ALJ found that Dunn was not disabled between March 2, 2013 and August 12, 2017 but was disabled again from August 13, 2017 through the date of decision.  (R. 1033.)

On July 13, 2020, Dunn filed the instant action appealing that portion of the Commissioner's final decision which found that she was "not disabled" between March 2, 2013 and August 12, 2017.  (Doc. No. 1.)

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive" when "supported by substantial evidence."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)).  Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by

substantial evidence.  *Id*. at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner.  *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210.  However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

### III.    STANDARD FOR DETERMINING CONTINUING DISABILITY

An individual who files an application for Social Security DIB and SSI must prove that she is disabled.  *See* 20 C.F.R. § 404.1505; 20 C.F.R. § 416.920.[2]  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The Social Security Administration may terminate benefits if the agency concludes, after reviewing a claimant's case, that the claimant's impairment "has ceased, does not exist, or is not disabling . . . ."  42 U.S.C. § 423(f).  Any determination made under section 423(f) "shall be made on the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being

---

[2]  Although DIB and SSI are separate programs, the law and regulations governing claims under the respective programs are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining disability.  *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

drawn from the fact that the individual has previously been determined to be disabled." *Id.* Where disability has previously been established, Social Security regulations provide an eight-step process for determining whether a claimant continues to be disabled for DIB purposes and a seven-step process for SSI benefits. *See* 20 C.F.R. § 404.1594(f), 20 C.F.R. § 416.994(b)(5)(i-vii).

The eight-step process proscribed for determining whether a claimant continues to be disabled for DIB purposes requires the ALJ to determine

(1) whether the claimant is engaging in substantial gainful activity;

(2) if not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing;

(3) if impairments do not meet a listing, whether there has been medical improvement;

(4) if there has been medical improvement, whether the improvement is related to the claimant's ability to do work;

(5) if there is improvement related to claimant's ability to do work, whether an exception to medical improvement applies;

(6) if medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment;

(7) if the claimant has a severe impairment, whether the claimant can perform past relevant work; and

(8) if the claimant cannot perform past relevant work, whether the claimant can perform other work.

*See* 20 C.F.R. § 404.1594(f); *Spivey v. Berryhill*, Case No. 2:16-cv-681-GMB, 2018 WL 1546358, at * 2 (M.D. Ala. Mar. 29, 2018).

The seven-step process for continued eligibility for SSI at 20 C.F.R. § 416.994(b)(5)(i-vii) requires an ALJ to determine

(1) Whether the claimant has an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant does, the claimant's disability continues.  If not, the evaluation proceeds to step two.

(2) Whether the claimant has experienced medical improvement.  If the claimant has, the evaluation proceeds to step four.

(3) Whether the claimant's medical improvement is related to her ability to work.  If it is, the evaluation proceeds to step five; if not, the evaluation proceeds to step four.

(4) Whether an exception under 20 C.F.R. § 416.994(b)(3-4) applies.  If no exception applies, the claimant's disability continues.  If an exception in (b)(3) applies, the evaluation proceeds to step five.  If an exception in (b)(4) applies, the claimant is not disabled.

(5) Whether the claimant has a medically severe impairment or combination of impairments.  If the claimant does, the evaluation proceeds to step six; if not, the claimant is not disabled.

(6) Whether the claimant is unable to perform any past relevant work.  If the claimant is unable to perform past relevant work, the evaluation proceeds to step seven; if not, the claimant is not disabled.

(7) Whether the claimant is unable to perform any other work within the national economy.  If the claimant is unable to do so, the claimant is disabled; if not, the claimant is no longer disabled.

See 20 C.F.R. § 416.994(b)(5)(i-vii); *Means v. Berryhill*, Case No. 2:17-cv-0283-RDP, 2018 WL 650852, at *3-4 (N.D. Ala. Jan. 31, 2018).

Medical improvement is defined as:

any decrease in the medical severity of your impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes

(improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).

20 C.F.R. § 404.1594(c)(1).  "To determine if there has been medical improvement, the Commissioner must compare the medical evidence supporting the most recent final decision holding that the claimant is disabled with new medical evidence."  *Gombash v. Comm'r, Soc. Sec. Admin.*, 566 F. App'x 857, 859 (11th Cir. 2014) (citing *McAulay v. Heckler,* 749 F.2d 1500, 1500 (11th Cir. 1985); 20 C.F.R. § 404.1594(c)(1)).  "To terminate benefits, the Commissioner may not focus only on new evidence concerning disability, but must also evaluate the evidence upon which the claimant was originally found to be disabled." *Id*. (citing *Vaughn v. Heckler,* 727 F.2d 1040, 1043 (11th Cir. 1984)).  "Without a comparison of the old and new evidence, there can be no adequate finding of improvement." *Id.*

## IV.   ADMINISTRATIVE DECISION[3]

Within the structure of the sequential evaluation steps for determining continued disability for purposes of DIB and SSI, the ALJ found that Dunn met the insured status requirements of the Social Security Act through March 31, 2013 and had not engaged in substantial gainful activity since April 27, 2011, the date she first became disabled.  (R. 1016.)  The ALJ summarized Dunn's hearing testimony as follows:

> She suffered a traumatic brain injury (TBI) during the tornado that hit her home in Eclectic, Alabama.  She has white matter ischemic lesions of the

---

[3]  Because Dunn's appeal is limited to the ALJ's determination that she was able to perform work from March 2, 2013 through August 12, 2017 (Doc. No. 16 at 4), the court omits discussion of the ALJ's application of the five-step sequential evaluation process which resulted in a favorable finding that she was disabled and therefore eligible for benefits as of August 13, 2017.  (R. 1028-33.)

> brain that cause headaches, which occur about three times per week. She experiences pain in hips, ankles, knees, and top of spine. She has experienced weight gain over time. She has problems with shortness of breath, caused by COPD and asthma. She also experiences shortness of breath with panic attacks and anxiety attacks. Her pain affects her ability to concentrate and focus. It is painful for her to sit, and [sic] has limited lifting, standing and walking ability. She has mental and memory problems, as well as a fear of various weather phenomena.

(R. 1023.)

The ALJ found that between April 27, 2011 and March 1, 2013, Dunn was severely impaired by medically determinable impairments which significantly limited her ability to perform basic work activities, including traumatic brain injury – organic brain syndrome; mood/affective disorder; rule out of posstraumatic stress disorder; personality disorder and obesity. (R. 1016-17.) The ALJ also found that the severity of Dunn's impairments met the criteria of section 12.02 of 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing 12.02"). (R. 1017-18.) Thus, between April 27, 2011 and March 1, 2013, Dunn was under a disability. (R. 1018.)

The ALJ found that Dunn developed new impairments after March 2, 2013. (*Id.*) He found her to be severely impaired by histrionic personality disorder, history of anxiety/posttraumatic stress disorder, depressive disorder, organic brain syndrome/history of transient ischemic attack and/or cerebrovascular accident with indications of microangiopathic white matter disease; head injury; obesity, chronic obstructive pulmonary disease with nicotine dependence/tobacco abuse, diabetes mellitus, and degenerative disc disease. (R. 1018.) The ALJ also found that Dunn had nonsevere impairments that did not cause more than minimal limitation of basic work activities.

These impairments included hypertension, hyperlipidemia, history of arthritis and myalgias, acid reflux disease, a history of anemia, history of  partner relational problem, history of alcohol/substance abuse, foreign accent syndrome and mirror writing syndrome. (R. 1018-19.)

The ALJ found that Dunn's hypertension hyperlipidemia and acid reflux disease were controlled with medication and that her history of arthritis and myalgias, history of anemia, history of partner relational problem, history of alcohol/substance abuse and foreign accent syndrome did not impose functional limitations on her ability to work.  (R. 1019.)  He found that her mirror writing could interfere with work that requires others to read her handwriting but that legibility of handwriting is not a basic work activity as set forth in Social Security Ruling 85-28.  (R. 1019.)  He found no evidence that these nonsevere impairments, singly and in combination, had more than a minimal effect on Dunn's ability to perform work-related activity.  (R. 1019.)  These findings led the ALJ to determine that, beginning March 2, 2013, Dunn did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1594(f)(2) and 416.994(b)(5)(i)).  (R. 1019.)  Specifically, the ALJ considered Dunn's nonsevere impairments under SSR 19-2p (obesity), Listing 9.00 (diabetes mellitus), Listing 3.02 (spirometry), Listing 1.04 (ability to ambulate) and Listing 11.18 (motor function).  (R. 1019-20.)

The ALJ considered the severity of Dunn's mental impairments under Listings 12.02, 12.04, 12.06, 12.08 and 12.15.  (R. 1020.)  He found that she was moderately

impaired in understanding, remembering or applying information; interacting with others, concentrating, persisting or maintaining pace; and adapting or managing oneself. (R. 1021.) The ALJ further found no indication in the record that Dunn has a "minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life." (R. 1021.) The ALJ highlighted that the limitations applicable to the "paragraph B" criteria were not an RFC assessment, but were a tool to rate the severity of mental impairments for use in the sequential evaluation process. (R. 1021.)

The ALJ further found that medical improvement occurred as of March 2, 2013. He cited Dunn's cessation of regular mental health treatment, reports that her depression was much better, and treatment notes that her depression was stable and anxiety controlled. (R. 1022.) The ALJ found that despite a deterioration of Dunn's mental health in July 2013 she remained oriented to person, place and time and had judgment and insight intact with normal speech, attention and concentration abilities, rates of thought and logical thought content. (R. 1022.) During a consultative psychological examination in November 2013, Dunn's mood and affect were stable and there was "no evidence of mood disorder, residual PTSD features, traumatic brain injury, bipolar disorder or any type of cognitive deficit." (R. 1022.) The ALJ found that Dunn's medical improvement allowed her to perform work because "[a]ttention and concentration were unimpaired, display of memory and ability to respond were consistent with normal intellect and good effort, thought processing and content were normal, and judgment and insight did not have any type of impairment which would prevent appropriate employment." (R. 1022.) Thus, the ALJ concluded that Dunn no longer had an impairment or combination of impairments that met or medically equaled

the severity of a listing (20 C.F.R. §§ 404.1594(c)(3)(i) and 416.994(b)(2)(iv)(A)).  (R. 1022.)

Based upon the evidence of medical improvement, the ALJ found that between March 2, 2013 and August 12, 2017, Dunn could perform a range of "medium work," as that term is defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c).  (R. 1022.)  He found the following workplace limitations applicable to Dunn:

> [She] had the ability to lift and carry up to 50 pounds occasionally and up to 25 pounds frequently.  She could push and pull within those same exertional limits.  She could stand or walk for about 6 hours altogether and she could sit for about six hours out of an eight-hour workday.  She could frequently stoop, crouch, kneel, crawl, and climb – but not ladders, ropes, or scaffolding. She could perform tasks not involving concentrated exposure to pulmonary irritants such as dust, gases, fumes, or smoke.  She could perform tasks in a controlled environment where she would not be exposed to extremes of temperature or humidity.  She could perform tasks not involving exposure to workplace hazards such as unprotected heights or dangerous moving machinery.  [She] could understand and carry out short, simple instructions consistent with the performance of simple, unskilled work of a routine, repetitive nature.  She could make simple, work-related decision [sic] but she could not carry out any complex instructions, nor could she engage in any long-term planning, negotiations or independent goal-setting.  She could tolerate occasional interaction with supervisors and co-workers, but no more than superficial interaction with members of the general public, and she could tolerate only minor, infrequent changes within the workplace.

(R. 1022-23.)

Based upon the ALJ's assessment that Dunn had the residual functional capacity ("RFC") to perform medium work as limited by her impairments, he questioned a vocational expert ("VE") to determine whether jobs exist in the national economy for an individual with her age, education, work experience.  The VE testified that a person with Dunn's profile could work as a hand packager, kitchen helper, and laundry worker.  (R.

1067-68.)  The VE noted that each job was classified as medium and unskilled with a specific vocational preparation ("SVP") level of 2.  (R. 1068.)  Based upon this information and the VE's additional testimony that there were 160,000 or more of each job available in the United States, the ALJ also found that based upon Dunn's age, education, work experience and RFC, there are jobs that exist in "significant numbers in the national economy" that she can perform, and therefore she was not disabled as defined by the Act.  (R. 1032.)  The ALJ specifically stated that he applied SSR 00-4p to determine that the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT").  (R. 1032.)

## V.    DISCUSSION

Dunn presents four arguments on appeal.  First, she challenges the ALJ's finding of medical improvement as of March 2, 2013.  (Doc. No. 16 at 4-8.)  Second, Dunn argues the ALJ failed to properly assess her RFC for the period between March 2, 2013 and August 11, 2017.  (*Id*. at 8-10.)  Third, Dunn argues that the ALJ presented and relied on a flawed hypothetical to the VE.  (*Id*. at 11-13.)  Fourth, Dunn argues the ALJ failed to resolve apparent conflicts between the VE's testimony and the DOT.  (*Id*. at 13-16.)

The Court evaluates each of Dunn's arguments below.

A.    Medical Improvement

Dunn argues the ALJ erred by finding the record establishes medical improvement as of March 2, 2013.  (Doc. No. 16 at 4-8.)  Dunn emphasizes the ALJ's finding that she met Listing 12.02 between her initial disability onset date of April 27, 2011 and March 1, 2013, which was based upon opinions from non-examining state agency psychiatrists

Robert Estock and Samuel Williams.[4]  (*Id*. at 5.)  She contends that the Commissioner bears the burden of proof to establish medical improvement and disputes the ALJ's determination that she experienced medical improvement because she ceased mental health treatment by March 2, 2013 and her July 2013 mental status examination showed improvement.  (*Id*. at 5-6.)  She further notes the observation of anxiety and depression in a progress note from her nurse practioner in November 2013.  (*Id*. at 6; R. 844.)  Dunn argues that psychologist Warren Brantley found her to still suffer from depression and PTSD in November 2013.  (Doc. No. 16 at 6; R. 857.)  She equates Dr. Brantley's observation of abnormal accent, histrionic features, excessive speech and decreased sleep

---

[4]  A claimant meets Listing 12.02 where there is

A.  Medical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas:

1.  Complex attention;
2.  Executive function;
3.  Learning and memory;
4.  Language;
5.  Perceptual-motor; or
6.  Social cognition.

AND

B.  Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F).

1.  Understand, remember, or apply information (see 12.00E1).
2.  Interact with others (see 12.00E2).
3.  Concentrate, persist, or maintain pace (see 12.00E3).
4.  Adapt or manage oneself (see 12.00E4).

*See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

to the symptoms which placed her within Listing 12.02 at the time of her initial application for benefits.  (Doc. No. 16 at 7.)  Dunn further argues the ALJ failed to mention "later mental health treatment records" which document symptoms which support a finding of disability.  (*Id*. at 7.)

The Commissioner responds that Dunn must prove that she was disabled within the meaning of the Social Security Act and that the ALJ had substantial evidence to support his decision.  (Doc. No. 17 at 4-5.)  She emphasizes the statutory commands in 42 U.S.C. § 423(f) that determinations made under that section "shall be made on the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled."  (*Id*. at 5 (citing 42 U.S.C. § 423(f)).  *See also* 42 U.S.C. § 1382c(a)(4) (providing that SSI benefits may be discontinued if substantial evidence demonstrates that an individual's impairment or combination of impairments are not disabling).  In short, the Commissioner relies on statutory language to rebut the argument that Dunn is "entitled to a presumption of continuing disability."  (Doc. No. 17 at 5.)

The Court finds that substantial evidence supports the ALJ's decision that, as of March 2, 2013, Dunn's mental health did not preclude work activity.  The ALJ cited Dr. Brantley's November 2013 examination report that Dunn's adaptive skills were "clearly independent" and that her communication skills were good despite her varying accents, stable mood and affect, normal intellect, thought processing and abstract thinking.  (R. 857-58.)  Dr. Brantley also found that Dunn had "fulfilling social and leisure skills, lives alone

and is able to meet her own needs. . . ."  (R. 858.)  He noted her ability to budget, computer skills and active life both online and in her community.  (R. 858.)  The ALJ made a direct link between Dr. Brantley's findings and Dunn's ability to apply herself to appropriate employment.  (R. 1022.)

Contrary to Dunn's argument, "an ALJ need not specifically refer to every piece of evidence, [rather] the ALJ's decision must contain sufficient detail so that [the court] can conclude that the ALJ considered the claimant's medical condition as a whole . . . ."  *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 601 (11th Cir. 2017).  This Court concludes the ALJ adequately considered Dunn's condition as a whole as the decision establishes that he reviewed and considered all of the evidence in the record.  (R. 1013) ("After careful consideration of all the evidence . . . ."); (R. 1022) ("After careful consideration of the entire record . . . .").  The ALJ cited to many different medical records and Dunn's testimony throughout his decision which supports his statement that he considered the entire record.  Accordingly, the record provides evidence which would allow a reasonable mind to conclude that Dunn's disability temporarily ceased on March 2, 2013.  The Court finds no reversible error.

B.    RFC Assessment

Dunn faults the ALJ's assessment of her RFC, arguing that it was based upon a report from Glenn D. King, Ph.D., which the ALJ conceded "did not appear to meet the regulatory definition of 'opinion.' " [5]  (Doc. No. 16 at 9; R. 1025.)  She argues that the ALJ

---

[5] The ALJ noted Dunn's objection to the inclusion of Dr. King's records in her medical file, and though he disagreed with Dr. King's conclusion of malingering, gave substantial credit to his

had an obligation to order additional medical examinations for the RFC assessment because there were no opinions related to her mental or physical function between March 2, 2013 and August 12, 2017.  (Doc. No. 16 at 9-10.)

The Commissioner responds that the ALJ is only obligated "to develop a full and fair record."  (Doc. No. 17 at 9 (quoting *Ellison v. Barnhart*, 355 F.3d 1272, 12766 (11th Cir. 2003)).  As with the first issue raised regarding the burden of proof in disability cases, the Commissioner places the burden of proving disability upon Dunn because "the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving she is disabled."  (*Id.* (quoting *Walker v. Comm'r of Soc. Sec.,* 404 F. App'x 362, 366 (11th Cir. 2010)).

The Court's review of the hearing decision shows that Dunn's medical records between 2014 and 2017 support the ALJ's assessment of her physical and mental limitations.  He noted Dunn's MRI showing white matter lesions and the absence of acute focal lesion in March 2016.  (R. 1023, 1569-70.)  In August 2014, Dunn showed only mild difficulties on a tandem gait exam with otherwise steady gait.  (R. 1023, 1997.)  She was prescribed Neurontin twice daily for neuropathy in her upper extremities and neck/back pain.  (R. 1023, 1997.)  Dunn's pulmonary function was deemed "acceptable," which the ALJ rated as mildly restricted.  (R. 1023, 1639.)  Records showed unlabored breathing and normal respiratory sounds during visits with internal medicine specialists between 2014

---

findings.  (R. 1025-26.)  The ALJ regarded Dr. Kings' findings as "cumulative or additive to findings on other examinations and findings" and clarified that he did not "automatically take [the report] to mean that [Dunn] has been malingering in all claims since she alleged disability."  (R. 1025.)

and 2016. (R. 1023.) Dunn denied breathing problems and chest pain in 2016. (R. 1812, 1816, 1821.) The ALJ found that a significant factor in Dunn's medical history was her diagnosis of diabetes mellitus, but that it was well-controlled with medication. (R. 1024.) The ALJ found Dunn's records contained no limitation caused by obesity, but noted that he considered the potential impact of that condition in her RFC and postural limitations. (R. 1024.)

Regarding Dunn's mental capabilities, the Court turns again to the ALJ's consideration of Dr. Brantley's November, 2013 examination. (R. 857-58.) As stated above, Dr. Brantley found that Dunn possessed good adaptive and communication skills with stable mood and affect, normal intellect, thought processing and abstract thinking. (R. 857-58.) He also found "no evidence of [Dunn's] need for assistance, care or supervision due to cognitive or emotional problems." (R. 858.) Dunn's self-report supported Dr. Brantley's conclusions that she was mentally stable and able to return to a work environment. (R. 858.) She related that she slept well and socialized both online and in person with family and friends. (R. 858.) Dunn was also able to perform all of her household chores, drive, and care for her own needs while living alone. (R. 858.) In addition, Dr. Brantley believed Dunn's computer skills would transfer well to a vocational setting. (R. 858.) As a result, the Court finds that the ALJ's conclusions regarding Dunn's mental ability to perform short, simple instructions for simple, unskilled work of a routine, repetitive nature is supported by the record. (R. 1022-23.)

Dunn argues that "[b]ecause the ALJ failed to cite to any specific medical facts" that support the RFC assessment in her case, he "impermissibly relied on his lay

interpretation of the clinical and objective evidence." (Doc. No. 16 at 10.)  However, given Dunn's burden of proving disability, the Court finds that she has failed to identify any single impairment or combination of impairments that undermine the RFC determination in her case.  The ALJ "has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007).  Here, the record contains sufficient evidence supporting the ALJ's RFC finding.  Further, Dunn cannot show the prejudice necessary for remand by merely speculating that additional medical evidence would have yielded a more comprehensive hearing. *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016) ("A claimant cannot show prejudice by speculating that she would have benefitted from a more comprehensive hearing.").  Finally, an ALJ is not required to base his RFC finding on a doctor's opinion. *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014). Because findings on claimants' RFC are reserved to the Commissioner, the Court finds that the ALJ properly executed his administrative function and committed no error. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c).).

C.     Hypothetical Posed to the Vocational Expert

Dunn alleges that substantial evidence does not support the ALJ's decision because he posed a flawed hypothetical question to the VE during her hearing.  (Doc. No. 16 at 11, 13.)  Specifically, she contends that the ALJ's question to the VE did not account for her

limitations in her ability to "maintain a particular work pace over the course of a workday or workweek," or "to persist at tasks." (Doc. No. 16 at 12; R. at 1067-68.)

In response, the Commissioner recalls the ALJ's explanation that the "paragraph B" criteria finding that Dunn was moderately limited in understanding, remembering or applying information; interacting with others, concentrating, persisting or maintaining pace; and adapting or managing oneself was not an RFC assessment, but a tool to gauge the severity of Dunn's mental impairment.   (Doc. No. 17 at 12; R. 1021.)   The Commissioner argues that Dunn conflates the ALJ's findings related to the "paragraph B" criteria with limitations on her RFC.  She further argues that the ALJ accounted for the moderate limitations in understanding, remembering or applying information; interacting with others, concentrating, persisting or maintaining pace; and adapting or managing oneself in the hypothetical restricting Dunn to

> short, simple instructions consistent with the performance of simple, unskilled work of a routine, repetitive nature.  She could make simple, work-related decision [sic], but she could not carry out any complex instructions, nor could she engage in any long-term planning, negotiations or independent goal-setting.  She could tolerate occasional interaction with supervisors and co-workers, but no more than superficial interaction with members of the general public, and she could tolerate only minor, infrequent changes within the workplace.

(Doc. No. 17 at 13; R. 1022-23, 1067-68.)  The Commissioner notes that Dunn does not identify any record evidence which indicates the ALJ overestimated her mental functioning capabilities.  (Doc. No. 17 at 13.)

The Court finds the Eleventh Circuit's affirmance of the Commissioner's decision in *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 490 (11th Cir. 2015) to be

instructive.  In *Carpenter*, the claimant alleged error in the ALJ's VE hypothetical based upon the finding that he, like Dunn, had moderate difficulties in concentration, persistence, or pace.  The ALJ's use of a hypothetical which required the VE to accomodate Carpenter's limitation to "simple, unskilled, routine, and repetitive tasks" was found to satisfy the moderate difficulties in concentration, persistence, or pace.  *Carpenter*, 614 F. App'x at 490 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).  The Court does not find any reversible error on this issue.

D.      Dictionary of Occupational Titles

Dunn asserts as her final issue that the ALJ erred in finding that she can perform jobs that exist in significant numbers in the national economy.  She bases this claim on an alleged conflict between the VE's testimony identifying jobs within her abilities and the description of those jobs in the DOT.  (Doc. No. 16 at 13.)  She argues that the DOT descriptions of "hand packager" and "kitchen helper" cannot be performed by a person with her mental limitations because each is assigned a reasoning level of 2, "which requires, at a minimum, carrying out "detailed' written and oral instructions."  (*Id*. at 14.)  She cites *Washington v. Comm'r of Soc. Sec.*, 906  F.3d 1353 (11th Cir. 2018) as authority for requiring an ALJ to identify and resolve apparent conflicts between the DOT and a VE's testimony regarding a claimant's ability to perform work.  (Doc. No. 16 at 13.)  Dunn asserts that the ALJ erred by failing to perform this duty.  (*Id*.)

The Commissioner responds that Dunn's argument fails under current Eleventh Circuit precedent holding that simple, routine and repetitive tasks are not inconsistent with

level 2 reasoning.  (Doc. No. 17 at 4 (citing *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005 (11th Cir. 2020)).

Dunn's argument is unavailing.  An "ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). Here, the ALJ accommodated Dunn's mental limitations by asking the VE if there were occupations that required an individual to "carry out short, simple instructions consistent with performance of simple, unskilled work in a routine, repetitive nature."  (R. 1067.) The VE testified that each occupation identified had an SVP of 2.  (R. 1068.)  The court notes that SVP levels and reasoning levels are not necessarily consistent.  *See Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 872 (11th Cir. 2016) (distinguishing between specific vocational preparation time ("SVP") and "reasoning levels, which supply supplemental information about the listed jobs.").[6]  Regardless, *Valdez* held that "simple, routine and repetitive work" can be performed by workers with a reasoning level of one or two.  *Valdez*, 808 F. App'x at 1009; *see also Peterson v. Comm'r of Soc. Sec.*, No. 21-10086, 2021 WL 3163662, at *3 (11th Cir. July 27, 2021) ("There [is] no apparent conflict between an RFC limitation to simple, routine, repetitive tasks and the DOT's description of jobs requiring level two reasoning.").  Because the ALJ clearly specified that Dunn was

---

[6] Neither the ALJ decision nor VE testimony provided reasoning levels for the occupations identified by the VE during Dunn's administrative hearing.

limited to "simple, unskilled work in a routine, repetitive nature," the VE's responses did not conflict with the DOT.  The Court finds no reversible error.


## VI.    CONCLUSION

After review of the administrative record, and considering all of Dunn's arguments, the Court finds that the Commissioner's decision to deny her disability between March 2, 2013 and August 12, 2017 is supported by substantial evidence and is in accordance with applicable law.  Accordingly, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

DONE this 15th day of March, 2022.


JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE